IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ██████@GMAIL.COM THAT IS STORED AT PREMISES CONROLLED BY GOOGLE LLC | MJ- 20-107<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Nicholas McConnell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google LLC, an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is located in email account ██████@gmail.com (the "Subject Account"), as described in the following paragraphs and in Attachment A.

2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since January 2020. I investigate matters related to counterterrorism and other crimes, including offenses

1

stemming from the sovereign citizen movement.[1] Based upon my training and experience, I am familiar with the types of criminal activity perpetrated by criminals and terrorists, to include acts of violence. Given my training and experience investigating various criminal violations and national security violations, I know that subjects utilize electronics and media storage to communicate with co-conspirators and to store information which can further show elements of planning criminal acts and being present during certain times. I know those records can be used to determine if a suspect of an investigation was in proximity to a crime in and around the date and time the crime occurred. In turn, I know that information can be used to exonerate or eliminate potential suspects.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (wire fraud) have been committed by Kartarius Johnson ("Johnson") in the Southern District of Alabama and elsewhere. There is also probable cause to search the information described in Attachment A for evidence or instrumentalities of these crimes further described in Attachment B. All dates, amounts, and locations described in my affidavit are approximations. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

---

[1] Sovereign citizens are persons who believe they are separate or "sovereign" from the United States. As a result, they typically believe they do not have to answer to government authority (e.g., courts, taxing entities, law enforcement). Based on my training and experience, I know that sovereign citizens share documents with one another in furtherance of their ideology and actions.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. From February 2020 to the present, Johnson, a resident of Mobile County, Alabama, has been allegedly attempting to fraudulently obtain real estate and a vehicle, property exceeding $4 million in value. This allegation stems from my review of numerous financial records, email correspondence, and other information obtained during my investigation. As part of his scheme, Johnson has emailed various entities and persons using the Subject Account and has provided victims a fictitious document called "Private Setoff Bond." Based on my training and experience, I know this document is commonly used by sovereign citizens to request Federal Reserve funding and to convince victims to pay the perpetrators.

7. In March 2020, Johnson visited the Mercedes-Benz of Mobile, a commercial business in Mobile, Alabama, with the intent to purchase a Mercedes Maybach vehicle. On March 17, 2020, Johnson brought in a "Private Setoff Bond" for $189,178.76 to the business to buy the vehicle. Johnson requested a buyer's order from Mercedes-Benz of Mobile to provide to his bank for wiring funds to the business.

8. On April 15, 2020, Mercedes-Benz of Mobile contacted its bank representative in New Orleans about the status of a wire transfer for Johnson's attempted purchase of the Mercedes Maybach. The bank had never heard of a "Private Setoff Bond."

9. On April 22, 2020, Mercedes-Benz of Mobile reached out to Johnson to ask if the sale would still happen. Johnson replied using the Subject Account.



10. On April 3, 2020, Johnson visited a Hancock Whitney Bank branch office in Mobile, Alabama to request Federal Reserve funding for the purchase of real property. Johnson

4

spoke with the branch manager and provided documents. After Johnson left the bank, he emailed the branch manager using the Subject Account.

> From: KD Johnson <████████@gmail.com>
> Sent: Friday, April 03, 2020 11:48 AM
> To: ████████@hancockwhitney.com>
> Subject: Executor Letter
>
> **** External Email - Exercise caution before clicking links or opening attachments. ****
>
> Hello it was great meeting you moments ago. Send a copy of those documents to the federal reserve. They will help you complete the request today. Thanks...
>
> KARTARIUS DEWAN JOHNSON., Estate
>
> Executor Office.
>
> Nation Alabama.
>
> General Post - Office.

11. On April 6, 2020, Johnson emailed the branch manager to inquire about the status of the requested Federal Reserve funding.

> From: KD Johnson <████████@gmail.com>
> Sent: Monday, April 06, 2020 12:06 PM
> To: ████████@hancockwhitney.com>
> Subject: Re: Executor Letter
>
> **** External Email - Exercise caution before clicking links or opening attachments. ****
>
> Hi! Just following up to check if the transaction was completed yet. I've forwarded the packet to ████████ & ████████ at corporate headquarters in Mississippi this morning just in case...
>
> KARTARIUS DEWAN JOHNSON., Estate

12. On April 7, 2020, Johnson sent multiple packages to Hancock Whitney Bank's headquarters in Gulfport, Mississippi requesting money for the purchase of a home and a Mercedes Maybach. In two packages, Johnson requested funds of $3,999,995 to buy a home in Daphne, Alabama, the real property he tried to buy when he had requested Federal Reserve funding at the Hancock Whitney Bank branch office in Mobile. These packages contained several documents, including a birth certificate, a residential purchase agreement, and wire transfer instructions. In a third package, Johnson requested $189,178.76 for the purchase of a Mercedes Maybach at the Mercedes-Benz of Mobile. This package contained various documents, including a birth certificate, a "Private Setoff Bond," and wire transfer instructions.

13. On April 8, 2020, Johnson used the Subject Account to email Hancock Whitney Bank's legal counsel, stating that the bank had not responded to him and that the bank was in "default." The correspondence included tracking numbers for the packages Johnson had sent to Hancock Whitney Bank's headquarters.



14.     On April 30, 2020, Johnson used the Subject Account to email three parties – a RE/MAX real estate agent, Hancock Whitney Bank's legal counsel, and a private law firm representative – regarding a real property closing transaction. In the email, Johnson stated that he had visited a law firm for the closing of the aforementioned Daphne real property, for which Johnson had entered a fraudulent residential purchase agreement. A firm employee had told Johnson that Johnson's meeting was cancelled due to Hancock Whitney Bank not providing payment to the firm's escrow account.

7

| | |
|---|---|
| From: | KD Johnson ▮▮▮▮@gmail.com&gt; |
| Sent: | Thursday, April 30, 2020 12:04 PM |
| To: | ▮▮▮▮ |
| Subject: | Real Estate Closing for ▮▮▮▮ Daphne, Alabama [36526] 4/30/2020 at 10:00am |

**** External Email - Exercise caution before clicking links or opening attachments. ****

Hi. I [Kartarius Dewan Johnson], executor of KARTARIUS DEWAN JOHNSON., estate, arrived at ▮▮▮▮, at 10:00am on 4/30/2020 to meet with ▮▮▮▮ to complete the property closing of ▮▮▮▮ Daphne, Alabama [36526]. First of all, ▮▮▮▮ did not meet with me at all. Two other gentlemen from the firm were sent to discuss the closing. Both men told me that no closing was scheduled today because Hancock Whitney Bank had not credited the earnest money payment to the firm's escrow account. You all know that the entire property payment of $3,999,995.00 was lawfully discharged by JOHNSON HOLDINGS ADMINISTRATIVE TRUST on 4/2/2020 via certified mail to Hancock Whitney Bank. It is ridiculous for you all to pretend to be unfamiliar with what is going on. The contract for the property was lawfully executed by both parties and was never cancelled. The seller did not show for closing today. We will ALL go to court and this estate will be seeking all oaths of office, bonds, B.A.R. licenses, and damages.

KARTARIUS DEWAN JOHNSON., Estate

Executor Office.

Nation Alabama.

General Post - Office.

Mobile. Johnson. Province.

United States Minor, outlying islands.

Disclaimer: ALL RIGHTS RESERVED.. Non UCC. The information contained in this email and or fax is private and confidential; it is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any redistribution or use of this information is strictly prohibited. If you have received this communication in error, please contact KARTARIUS JOHNSON®, immediately at the ▮▮▮▮ or email us at ▮▮▮▮@gmail.com address set forth above and destroy all copies of the original message. Thank you. The staff and office of KARTARIUS JOHNSON® Mobile, Alabama [36603]

15. On October 29, 2020, Johnson emailed a RE/MAX real estate agent to inquire about the status of the Daphne real property. Johnson asked if payment of $3,999,995 had been received.

8

**From:** KD Johnson [redacted]@gmail.com>
**Sent:** Thursday, October 29, 2020 12:33:11 PM
**To:** [redacted]
**Subject:** [redacted] [redacted]e

Greetings,

Just following up to check the status of the property at [redacted]e. I was recently notified that it had been sold. Did you all receive the payment of $3,999,995 from KARTARIUS DEWAN JOHNSON?

--

**Disclaimer: ALL RIGHTS RESERVED.. Non UCC. The information contained in this email and or fax is private and confidential; it is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any redistribution or use of this information is strictly prohibited. If you have received this communication in error, please contact the office of KARTARIUS DEWAN JOHNSON®, immediately at [redacted] or email us at [redacted]@gmail.com address set forth above and destroy all copies of the original message. Thank you. The staff and office of KARTARIUS DEWAN JOHNSON® Mobile, Alabama [36601]**

16. On October 20, 2020, I sent a preservation request to Google. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

17. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers

of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google's subscribers) and information concerning subscribers and their use of Google's services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

18. A Google subscriber can also store with Google files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

19. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

20. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can

include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

21. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and Google's support services, as well as records of any actions taken by Google or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

22. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy"

while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

23. Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the

requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

24.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give the target an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Dated December 9, 2020.

Respectfully submitted,

_____
Nicholas McConnell
Special Agent
Federal Bureau of Investigation


THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS __10th__
DAY OF DECEMBER 2020.

P. Bradley Murray U.S. Magistrate Judge

Digitally signed by P. Bradley Murray U.S. Magistrate Judge
DN: cn=P. Bradley Murray U.S. Magistrate Judge, o=Southern District of Alabama, ou=United States District Court, email=efile_murray@alsd.uscourts.gov, c=US
Date: 2020.12.10 12:35:01 -06'00'

P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE

13